Good morning, your honors. My name is Richard Masson, and I am the attorney for the appellants, Dolores Stout, Kauffman Group, Incorporated. This case is one about a motion for summary judgment. The issue before this court is the findings by the district court as well as the bankruptcy appellate panel that found that the partial summary judgment that was granted by the district court was proper. We disagree. The reason why is because the standard for a motion for summary judgment requires that there be no finding of any genuine issue of material fact, and that in the event that there are any sort of disputes or conflicts between the evidence, that the evidence is to be believed by the non-moving party. Also, with regards to that, when there is declarations, even though they may be self-serving, the court is not to challenge the credibility as to what has been put before the court in relation to that. Well, the elephant in the room here is it seems really difficult to reconcile the two The summary judgment happened first, right? That is correct, Your Honor. Okay. So, can we properly consider the bankruptcy court's decision in the discharge adversary in reviewing the merits of the bankruptcy court's earlier decision in the preference adversary? I apologize, Your Honor. I wasn't too clear as to what the court said. Well, can we consider what happened after in what happened here? Because what happened in the trial obviously doesn't seem to, you could say from that, well, there must have been tribal issues because the court found the other way. But can you really consider what happened after as, you know, I guess arguably what was presented on summary judgment could have been different. That's what I think they're arguing. And that you could have not created a tribal issue, and then later the tribal issue came up. So, can we consider what happened after to look at what happened here? I think that the court needs to consider what happened after. But what authority do you have for that? Because they are separate. It's not necessarily the authority per se of what I have in relation to whether or not the issue is related to the motion for summary judgment. The issue, however, is the court should consider it because it shows that the motion for summary judgment should not have been granted. Well, but arguably. Because there was tribal issues. There was tribal issues with that. Arguably, since you do the summary judgment on the papers, arguably you could, it could have just been crummy summary judgment papers that didn't show there was a tribal issue and then later, oops, there is. And it could have been, but that wasn't the case here. In fact, there was declarations by both the debtor as well as the, my client, Dolores Stout, as well as a witness, Robert Kayford, which specifically provided direct evidence that the business owned the property. On top of that, there was also a deposition. Both of these, right? I apologize. The BAP did both of these cases, 3-7 and 3-8. No, the opposing counsel or my co-counsel, Mr. Winston. No, the BAP. Oh, yes. The Bankruptcy Appellate. It did. It handled both of these together, essentially. It did. Right. Correct. So, they would be aware of the inconsistency, but they don't seem to be concerned about it. And that's why we brought it here to this court, is because it does need to be concerned about it. Because in the BAP's opinion, I think they even point out that there is some sense of the court taking a liberty of just disregarding what evidence was presented during the motion for summary judgment. In fact, the court states on page 33 of its opinion, and I'm referring to the BAP, that it says at the first full paragraph, Dolores seeks to manufacture a genuine issue of fact. And they're stating that based upon the declarations as well as the depositions, which in the case of Nigro versus Sears and Roebuck, the court specifically said that declarations are intended to be self-serving, provided that there is actual supporting facts to support the arguments in the motion for summary judgment. So, if we put aside the bench trial, we put aside the later decision of the court, and look just at the summary judgment, what in the materials that were presented to the bankruptcy court created a genuine issue of material fact as to whether the assets, the Qualtech assets, were property of the debtor, who in this case was Edward Stout? What created the genuine issue? Well, there's number one, the declaration of Edward Stout himself. In his declaration, he specifically says that the business owned it. Secondly was the actual operative documents, including the purchase agreement, the assumption and assignment. So, if I follow through the paper trail, it says that Stout never owned the property, that it went right to, I guess it was to apply. I think it was Ziptron then, and then became applied. Is that correct? So, the bill of sale gives the property, Qualtech transferred the assets to Applied? Correct. Applied slash Ziptron. Right. So, there's no evidence, was there anything in the paperwork that showed that those assets ever went to, were ever transferred to Mr. Stout? Yes. In addition to that, you had the corporate tax returns, as well as the testimony of all of the parties and witnesses that it was owned by the corporation. In fact, even in the BAPT's own opinion, they note that the asset had been transferred at some point in time, but they're not sure when, that even if it was transferred, it fell within the preferential period of time because it was a secured interest. There was the UCC1 filing. Are you talking about the transfer to? To the creditor, or I'm sorry, to the adversary party, Dolores Stout. Dolores Stout. And then to Kauffman Group, Incorporated. Okay, so when I went through the paper trail, I didn't see any transfer of the assets from Applied to Edward Stout. Well, actually- Is that correct? Right. It was never transferred to Edward Stout. The actual debtor never owned the property. What the court grabbed ahold of, which was improper based on a motion for summary judgment, was the language used within certain documents that were made between my clients and the debtor. And what the court found was, well, I'm going to read this document in this manner, and I'm going to make this inference. The problem was that in the BAPT opinion, what the court did was disregard some of the statements within those documents. For example, there were two loan documents in 2005. One loan document was between my client, who had loaned $250,000, that said that she was taking a secured interest against the properties owned by the corporations. So you have that testimony right there that shows that the corporation owned it. What the court did was disregard that loan document and focused on another loan document that was intended for the personal guarantee of the debtor. What about the evidence that Mr. Stout was the alter ego of the companies? Well, that's the point, is in the other matter, we call it the 727 action, in that there was no finding that there was an alter ego. What about on the summary judgment? Was there enough so that there wasn't a genuine issue material fact that he owned the assets? No, because in the declaration of Ed Stout, as well as along with the other documents that were presented with the motion for summary judgment, the fact is that Ed Stout maintained the corporations as separate entities, that they had separate corporate books, that they maintained the corporate formalities, and that he did not commingle personal assets within the corporation. Those were specific, stated, direct evidence that was provided at the time of the motion for summary judgment. Well, but Dolores, if you look at the excerpt of Record 527 at page 125 in her deposition, Dolores states she understood the business assets to have been owned by the debtor. Can we take that statement as a concession that the debtor owned the business equipment at issue? Well, it also goes to a situation of putting it into context of what did a 70-plus-year-old woman during her deposition that was asked questions over and over again, maybe she confused the issue. But the issue comes down to in the motion ... I'm 60, so do I have the same problem by asking you the question? No, I find this, I find your honor extremely sharp and capable. I have 30 seconds left. I would like to reserve some for the rebuttal if necessary. Thank you. Thank you. Mr. Armstrong? Well, I'm just going to address the preference issue, and the issue is, did the ... well, actually, it should be framed this way. Did my clients as the moving party present evidence showing that there was no genuine issue of tribal fact, that the debtor had an interest in the property, and that there was a transfer of that property within the preference period? And we're just talking about ... it's a little bit ambiguous, but it seemed to me that we were only talking about the assets that were originally owned by Qualtech, and then were transferred via the asset purchase agreement to apply. Are we talking about any other property? Well, here's kind of the rub, and I'll take my own view from the lawyer trying to litigate this case, and there was a lot of intermingling of the assets. The documents weren't clear. The documents were ambiguous. That was one of the issues that the bankruptcy judge picked up on, on the summary judgment, is that it looked like that there were multiple efforts to try to foreclose on the same assets that appeared to be jointly owned by several corporations, all owned and controlled by the same person. Well, I didn't see that at all. So when I was going through the documents, I saw that Qualtech owned the assets. The assets were sold via the asset purchase agreement, which was assigned to Applied, and then a bill of sale transferred the assets, those assets, directly to Applied. And I saw nowhere in any chain of title that those assets were ever transferred to Mr. Stout. I mean, ultimately, they were transferred to Dynamic DSI, but I didn't see. So what document actually transferred those assets that had been transferred by the bill of sale to Applied to Mr. Stout? There weren't documents. Okay. So there's no documentation of that. So why isn't that enough to create a genuine issue of material fact as to who owned the assets? Well, because in large part, when you looked at the UCC-1 filings against the assets, where there's lists of what the assets were. Right. And the UCC-1 would perfect Dolores' security interest, including in Dynamic, which at that point in time, the assets had been transferred to it, but I don't see how that affects a transfer to Mr. Stout. Well, let's back up a little bit, because your timeline's a little off. Okay. Show me why it's off. Let me just start maybe backing up a little bit, is that Edward Stout had a couple of corporations, Dynamic, Stamping, and Applied Engineering. He then purchased the assets of Qualtech, and then, including the- Entered into an asset purchase agreement, which he assigned to Applied, correct? That's what the documents say. Right. But- Okay. So, Applied had entered into, had the asset purchase agreement with Qualtech, and then by bill of sale, the assets were transferred to Applied. That's what the documents say. Right. But then what happens is that there's, then once there's lawsuits pending against the corporations and Ed Stout, he dissolves all the entities. Well, that happens much later. I think your timeline is off. So, in the end of 2008, according to his declaration, Applied transferred its assets to DSI. And it's after that, that Dolores files a UCC-1 on DSI's assets, as well as the other corporations. Right. But what my point is, that I'm getting to, is that when he dissolved the corporations, then Ed Stout had an interest in all the assets- You're talking about California Corporate Code 2004. Correct. Is that what you're saying? Yes. Because, as I read that, it says you have to wind up the business of the corporations and you pay out the creditors first. So, there's no automatic ownership of the shareholder of the assets until after the winding up. Well, no. But it's an equitable right. And that's the point, is that you have to have- What's an equitable right? It's an equitable right in all the property of the corporation. So, he would hold it as a trust, according to California law. Right. He would hold it as a trustee- Correct. For the creditors, and it wouldn't be property of the estate under bankruptcy law. Well, no. As we were saying, it would be, because he dissolved it before the bankruptcy. Right. But he would be holding any assets. I mean, to the extent that happened, which is- I don't see how that creates a genuine issue of material fact, because we don't know. According to the documents, or his view of them, or the evidence he placed, it was all Well- Correct? Isn't that his theory of the case? Well- So, there were multiple agreements purporting to transfer the assets to Dolores. Right. But one of the things that the judge seized up on in the recitals of those agreements, there was representations that there was a joint ownership with the debtor and the corporation on those assets. And that was one of the things that the judge was focused on, is that irrespective of bill of sale documents, is that you have these contracts being entered into with the debtor and his mother, where there's recitals indicating that he's got an ownership right in the property, and she's taking steps and filing UCC-1 documents, as if there's a joint ownership. Well, the documents were pretty ambiguous, so I'm having trouble seeing why the bankruptcy court didn't get it wrong in saying there was no genuine issue of material fact. I mean, there's nothing that clearly shows that the assets belong to Mr. Stout. There could be arguments that are made, as you're making them now, but that's not enough for a summary judgment in favor of the trustee, is it? Well, and that's what I'm getting back to, is did the trustee have an ownership interest? Because basically what happened here, in effect, is debtor owns all the stock in all the corporations, has full control of all the corporations, strips out all the assets of the corporations, thereby rendering the stock valueless, dissolves the corporation, and then files for bankruptcy. And therefore, you know, intentionally impairing the value of the stock, which is certainly an asset of the estate, and certainly the estate has been harmed by that conduct. Well, let me ask you this. I think Judge Akut has asked you a lot of good questions, and I tentatively think that there may be some tribal issues here. But let's say if we were to affirm that summary judgment, what are you going to go back and do? What are you going to go back and claim that means? Well, I'm going to claim that the trustee then has the right to those assets. And then the trustee is going to... Well, how do you reconcile that with what happened in the bench trial and the other one? Well, I'd say one of the reasons why I'm repealing that is... Well, but let's say we affirm on that, but we affirm on this, which seemed to be irreconcilable. Then you're going to go back, and then you're going to try to claim that you have... that the estate has what in the other one the estate doesn't have, right? Correct. Well, yeah. But I think that... And this is what the bankruptcy... And you're going to do that with authority and at the top of your voice. Well, that's my job. But I would say this, is that... And I think some of your questions earlier to my learning council were on point, is that sometimes people, when they oppose a summary judgment motion, that there's not a full disposition of the record, and the judge is making a call based on the evidence before it. And then later on, if you have a full-blown trial, the judge might go, well, you know, looking at that, I might have gone the other way. But you're looking at two different evidentiary records. But if it's the same judge, you can't reconcile these two. And if we affirm both of them straight across, then you're going to go back and do what says you can't do and what happened in the trial, right? Well, I don't know if I wouldn't agree with that assessment. And if we said that there was a triable issue, then it's going to go back to the same judge, and that judge is going to decide what it all means and... Well, I think that there becomes a slight difference between what's considered property for preference purposes, perhaps than for 727. And is there a case that explains that the property of the debtor is different in those two statutes? No, but it seems when you kind of go through it, it seems that the definition of property is construed more broadly for preference purposes than it is for 727. I mean, that wasn't the basis for her explanation of why she reached a different result. She said she read a new case which rejected plaintiff's argument that transfers from debtor's wholly owned corporation to pay debtor's personal expense could constitute a basis for denial under 727A2. I mean, it seems like she had a new case with a new rule, which she found persuasive. Well, I think that was more to do with the alter ego issue, and that was more developed there, and that's what she was dealing on. The alter ego issue she didn't really address because she was more focused on the evidence that was submitted in opposition and found that persuasively showed that there were not tribal issues in fact and that the debtor had an interest. So do you think in the 547 case she thought that there was no genuine issue but the corporations were the alter ego of the debtor? Is that the basis of her ruling? I don't think that was the basis of her ruling because I don't think... What was the basis of her ruling? I think the basis of her ruling was that she was convinced that based on the contemporaneous documents and the conduct of the creditors and the debtor that there was an intent to transfer assets that belonged to the debtor or the debtor had full control over that including like the UCC-1 where it listed the same assets as being owned both by the debtor and by the corporations is that she was convinced that... Mr. Stout didn't own the property of the UCC-1. I agree. No, I agree the UCC-1 does but what she says it was circumstantial evidence of what the party's intent was regarding the property. Rebuttal. Just really quickly, Your Honors, I think the court has got the tone of the issue before it. The fact of the matter is that in this situation, Mike Lyon, has been denied the opportunity to present all the facts and information before the court and before the trier of fact and at the end of the day, the court disregarded that there is a genuine issue of material fact and denied my client that opportunity to present it. Submit. Thank you. We thank both of you and now we'll hear Part 2. Get some exercise walking across the room anyway. That's right. We've got a new place to sit. Very exciting. Okay. Pardon me for a second so that Mr. Winston can set up. Sure, absolutely. Okay. So this is now we're on the issue on the 727 and here is where the judge found expressly that the debtor intentionally transferred these assets of corporations that he was the sole shareholder, officer, and director of, fully controlled to his mother in fraud of creditors. And the issue where the court came up with, we believe, with the legal areas that we're addressing on this appeal is that the court did not believe that the evidence was sufficient to make a finding of alter ego under the first prong under California law. Under bankruptcy law, the law of alter ego is governed by the law of the state, and that means California law controls. Just to make sure I understand, we're reviewing the bankruptcy court's actual findings here on alter ego for clear error? No. Or do you think the bankruptcy court applied? No, I believe it's de novo because I believe she applied the wrong legal standard. So what was the wrong legal standard or legal rule she applied? She believed that based on existing Ninth Circuit precedent that the only way that a debtor could be liable for the debts of a corporation, even involving a fraudulent transfer like she found, is if the corporation was set up as a fraud from its inception, meaning it didn't keep corporate records, it was undercapitalized from the beginning, and was set up for a fraudulent purpose. And while I can see that, that is a way to find alter ego, California is more liberal in the legal standard on which you may find or apply the doctrine of alter ego. And one of the cases I cited to the bankruptcy court and to the BAP in here, it's an old case admittedly, but I think it's the case that's the closest to the point that I'm trying to make, and it's Minifee versus Rowley, 187 Cal 481. And there the California Supreme Court talks about there's two standards. First, there has to be a sufficient unity of interest between the shareholder and the corporation. And secondly, that you have to find that there was some type of, maybe not outright fraud, but fraudulent conduct or inequity or injustice if the corporate formality was upheld. The record below showed that the judge was convinced that the purpose and intent of these transfers was to defraud, delay, and hinder creditors. I think she may have expressed findings that pick a verb and she found that all of them were there. But what she was concerned with was, well, how do I get to part one with the unity of interest? And now in Minifee, what the court said is, there was a gentleman who had almost all the shares of a corporation, but he had given a couple of shares to a couple of different directors. But the allegation was that he controlled the board of directors, he was the only one who had an interest in the corporation, and he made all the decisions for the corporation. And based on that, the California Supreme Court said that was enough to meet the first prong. And that was something that we had argued to Judge Smith in saying, look, say what you want, there was no other shareholder at the time of these transfers than Mr. Stout. He was the officer and director of these corporations. He had full control of them. No one had an interest in these businesses but him. He had full authority to do whatever he wanted with them. And so he had the control. And that was enough to meet the first prong of the alter ego doctrine. And I will concede that there was evidence submitted that there were corporate minutes, and that at least at the time the corporation was initially and all these corporations were at least initially incepted, that they had funding and the businesses didn't go well. But that is not the only way in which California, at least the California Supreme Court, has applied the doctrine of alter ego. And so here we have a situation, getting back to the point I was making earlier, was you have a debtor who's got these debts. He has these corporations. Just to make sure, you're saying that you think that California law of alter ego says that if you have a sole shareholder of a corporation and the corporation transfers property that would be useful in the shareholder's bankruptcy, that that's enough to establish the shareholder is the alter ego of the corporation. That fact alone. It's the sole shareholder of the corporation and the transfer of the assets. Is fraudulent. Well, so the transfer of the assets would be fraudulent only if they belonged to the shareholder, I guess, right? Under bankruptcy law? Well, that's what I'm saying. This is the issue. Because bankruptcy law says we look to state law for alter ego findings. But you're saying California law says if it's a sole shareholder, that's enough to be alter ego. Am I understanding that correctly? Almost. You got the first half of it right. That's essentially what you're saying. Well, I'm saying there's two prongs. And the first prong is, is there sufficient unity of ownership and interest? And a sole shareholder is enough. Would be. Because the second part only says that we will only, California courts say we will only use this alter ego doctrine if it's necessary to correct some fraud or bad doing, ill doing. Right. So that part is the when they will use the alter ego doctrine. But the first part is unity of interest. And you're saying, you interpret California law as saying all you need is to have one shareholder and their alter ego. Right. I just want to make sure I understood that. Right. And that is the holding of the Minifee versus Rowling case because that was an issue. That was a couple hundred years of case law since then. Well, it is. But I will say that that case has never been disapproved. And there's other cases that haven't really addressed that discrete issue. In fact, these issues don't come up in the appellate cases often. I mean, that's one of the reasons for the reachback. And I've drilled down and I've gone through all the alter ego cases. And no case has ever said that you couldn't do an alter ego that way. The California Supreme Court in 1922 said you could do it that way. No other case since then has said that that would be an improper way or that there was that reasoning or that rule is called into doubt. Because really what the court was saying is like saying if you have full control, then it's like you're double because it's you. You have an interest. You make all the decisions. And so that's a risk. You're kind of going down on your time. I wanted to ask you about the timeliness of your appeal. You seemed like there might be a problem there. You did not file a reply brief or otherwise respond to the debtor's affirmative defense that your appeal of the discharge adversary is untimely. Have you waived this issue? No, I haven't waived. In consolidating the cases, are you just claiming that that cures your untimeliness? No, I don't think it was untimely. I think it's the time. My understanding of the rules is that based on when the appeals were filed and when there's a cross appeal, when there's an initial appeal, that under the rules we have. It's not a cross appeal. We got two appeals, right? Right here we have two appeals. And there were. . . Well, no, there was a cross appeal. Were they consolidated? Yes, but it was a cross appeal. Well, the court didn't expressly consolidate them. It heard them together. It issued one opinion, but it didn't state we're consolidating these cases. Isn't that right? That's what the opposing counsel argues, and that seems to be correct. No, that was not my understanding. My understanding was it was a cross appeal. But is there a consolidation order? I'd have to look. I didn't really. . . Are the parties different in the two cases? Yes, the parties are different. So the BAP referred to them as two related appeals, and they were decided separately by the bankruptcy court, different parties. My notes say the notice of entry of judgments stated that they were separate judgments. I think the issue he's saying is whether. . . There was no issue that the BAP appeals were timely. It's the issue I think the counsel's raising is whether the cross appeal that we filed is the order of appeals where they filed their appeal of the BAP order, and then after they filed an appeal of the BAP order, we also filed a cross appeal. It just seems to me that the BAP and the bankruptcy court emphasized that the two adversaries are separate cases and decided them on separate records. It just happened to be. . . Different records. So it wasn't a cross appeal of the 3-7, so they appealed the ruling on the 547B case. You didn't cross appeal on that. You appealed on your own case, the 727A case, correct? Yes, to the BAP. We both filed appeals to the BAP. Right, but yours was more than 30 days from the decision, and that's the argument they're making. Not from the initial order to the BAP. What they're saying is that our appeal from the BAP to here was later. Right, was untimely, was beyond the 30 days of the BAP decision. That's their argument, and that since it was a separate appeal, you're late, so we can't hear this. We don't have jurisdiction. But our position was it was a cross. . . They were consolidated together in one decision, and that's why we filed what we believe was a cross appeal. Okay, so your argument is they were consolidated, but you didn't. . . your argument here. But what made them consolidated? There was no consolidation order. I thought the BAP. . . Well, I'd have to check the record again, but I'm pretty sure the BAP consolidated them. At least that was represented. They were being heard together. They were consolidated. We had one argument and we had one opinion. That's all. Thank you. Good morning, Your Honors. I'm Michael Winston, representing the debtor Edward Stout in the 727 appeal. To address a few points, there was no consolidation below. The consolidation motion was in this court after the notice of appeal and the notice of cross appeal were filed. Well, Adams Apple sort of has a very broad standard for consolidation. It basically says, well, it's in the broad discretion of the district court, it's common issues of law and fact. Good enough. Trial court could consolidate it, so we'll deem it consolidated. Why isn't that enough for us to construe these two appeals as consolidated, since BAP had the authority to do it and decided it in one opinion? Same law and facts, obviously. Because of the different parties, for one thing. My client, the debtor Edward Stout, did not participate in the preference action. He was not given the... Had the motion to consolidate been brought below, sure, it could have been granted, and then he would have been participating in that action. So it's fundamentally unfair to do it after the fact now when he was deprived of that before. Had he been in that case and we end up at this place, then that's a more compelling argument. Well, then, if you don't go with In re. Adams Apple, that I think you've... It's not a Ninth Circuit case, but you've got the Second Circuit case, in re. in due craft, where that held that the timing requirements for appeals from the BAP under federal rules of appellate procedure 6B are non-jurisdictional claim processing rules, and so that doesn't... If the timing requirements are non-jurisdictional, courts have more discretion to reach the merits, whereas here a timeless objection has been raised, right? Yes. Okay.  Do you agree that the bankruptcy court's judgment in the discharge adversary is in conflict with the district court's judgment in the preference adversary, particularly on the issue of whether the business assets are the debtor's property? Yes, I do, and believe me, I've given a lot of thought time to that issue. So would the bankruptcy estate be left in an untenable conflict regarding the status of the business equipment if we were to affirm in both cases? If you affirm in both cases, what I think is going to happen next is there's going to be a motion in the preference action taking the final judgment in the 727 action and asking for claim preclusion. But there... Well, there's... So if we affirm it... In other words, if we affirm the 727, then it'll be final, you know, when the time for petitioning for cert runs out, which I'm sure the Supreme Court won't want to hear this one. Right. And so then you'll go... I believe in the preference action to say there's a final order saying it's not property of the debtor. Is that what you're saying? I believe it would be Mr. Masson who would be doing that. But yes, that seems to be the next logical step if this court doesn't... If this court affirms this case and it wants to, in the interest of judicial efficiency, reach that issue, I think it could and should. But if it doesn't, then yes, there will be a claim preclusion motion in the preference action. So do you want to address the alter ego argument? Is that the law in California from Menifee that given that Mr. Stout was the sole shareholder of all of the corporate entities that held the Qualtech assets, that therefore he's deemed to be the alter ego of the corporation? Well, I'd be happy to address that. It is an important issue, one which was argued to some extent below. But part of the problem with that argument for Mr. Armstrong's case is that it was waived below in the closing trial briefs. He suggested to the trial court that she not even reach that issue. I think that is because he realized there was no evidence in the record to support it. And I think that was a waiver of that issue below. It was also repeatedly brought up in the post-trial motions, and she kept on telling him, but no, you offered no evidence, you waived it. As far as Menifee goes, there are so many other cases since then that say the one shareholder situation is not enough by itself. You've got to look at all the other factors. And in this trial, we presented on my side the mountain of evidence I referred to in the brief that the bankruptcy court kindly took the time to review, and she agreed. It was a mountain of unopposed evidence  and the separateness of the entities were maintained for years and years and years. So I don't think the alter ego issue was preserved, and there's certainly no evidence in the record to support it. One factual issue, if I may just digress to the other case a little bit, Your Honor was asking about transfers from applied to DSI, and I believe that, Your Honor, and it's easy to do this because we've got an alphabet soup with acronyms, the transfer from Qualtech went to KGI, Kauffman Group, Inc. DSI was the earliest of all these companies formed and never received assets from Qualtech. Okay, so I have a note that in his declaration, Mr. Stadt stated that both applied and ECS transferred all of their assets, including those in question, to DSI on December 31, 2008. Is my note wrong, or am I misunderstanding that in the declaration? If that's what it says, it's a typo of some sort. So it should have been KGI, is what you're saying? KGI, yes. And I believe the context of all the other documents support that. So even taking a look at Menefee, and it's been a long time since I read it, and there was no reply, so I wasn't sure what to prepare for here, but this unity of interest issue was refuted. First of all, there was no argument, no evidence at the trial court level, and it was refuted through the extensive direct testimony of my client, Mr. Stadt, his mother, Dolores Stout, some other witnesses, and then the boatload of corporate records. We bared everything in discovery. We presented it to the judge here. So I don't see how you get unity of interest just from the sole shareholder issue, and that theory that they're arguing about an equitable interest certainly doesn't apply to the 727 cases. I've cited Thurman from the Tenth Circuit. The BAP in the Ninth Circuit has addressed Thurman. This court doesn't appear to have yet. But clearly there's a long line of cases that have been called black-letter law at this point by the bankruptcy courts that say under 727 there is no equitable or derivative interest considered at all. And with that, unless Your Honors have some more questions, I think I'm ready to conclude. Thank you. Thank you. Thank you. I think we took over your time, but you'll have a minute. All right. As I said, the only point I wanted to address, and this is the point that I conceded, I thought, which was that we didn't dispute that the corporate formalities were followed for the corporations. That wasn't the issue. The issue was who really had control of these entities, and that's what the Menefee case was about. And the case that Judge Smith cited and relied on in her orders and her judgments expressly talk about this issue of corporate formalities. And that was my point is that under California law that that is not the only standard, but she felt based on prior Ninth Circuit precedent she had to go that way unless there was some indication that there was another way of doing it. That's all. Unless anybody has any questions, I'll submit. Thank you. We thank all counsel for your helpful arguments. The cases just argued are submitted. That concludes the calendar for this morning. We're adjourned. All rise.
judges: Clifton, Callahan, Ikuta